UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:06cv222

| | |
|---|---|
| ROBERT FRANKLIN PINKSTON, d/b/a PINKSTON SALES & SERVICE and PINKSTON'S LAWNMOWER AND EQUIPMENT, INC., <br><br> Plaintiffs, <br><br> v. <br><br> OUTDOOR EQUIPMENT DISTRIBUTORS, INC., STI TURF CARE & EQUIPMENT, LLC, ROBERT L. ZUCKER, JR., MATTHEW J. MACHTAY, and LORI WHITE, individuals, EXMARK MANUFACTURING COMPANY, INCORPORATED, a foreign corporation, <br><br> Defendants. | ORDER AND MEMORANDUM |

**INTRODUCTION**

The plaintiffs filed their Complaint on May 17, 2006 later amended twice. The defendants filed motions to dismiss. (Doc. No. 51, 52, 53). By Memorandum & Recommendation ("M&R"), the Magistrate Judge recommended dismissal of all claims. (Doc. No. 64). The plaintiffs filed timely objections (Doc. No. 65) which are now before the Court.

After *de novo* review of the defendants' 12(b)(6) motions, the plaintiffs' responses and all relevant pleadings, and taking all well-pleaded allegations as true and in a light most favorable to the plaintiffs, the Court **GRANTS** the motions to dismiss all of the plaintiffs' claims based on the

1

factual findings and legal conclusions set forth in the M&R; and with respect to those findings and conclusions regarding the fraud claims set forth in the Sixth Claim for Relief, the Court adds this analysis.

## STANDARD

A party may file specific, written objections to a magistrate judge's M&R within ten days after being served with a copy of the recommended disposition. 28 U.S.C. § 636(b)(1); see also Fed. R. Civ. P. 72(b); United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (holding that "a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection"). A district judge must conduct a *de novo* review of those portions of the report to which proper objections are made. 28 U.S.C. § 636(b)(1).

In its review of a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff," Mylan Labs, Inc. v. Matakari, 7 F.3d 1130, 1134 (4th Cir. 1993), and should grant the motion only where "it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." Id.; see also Eastern Shore Markets, Inc v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000) (a motion to dismiss tests the "legal sufficiency of the complaint").

## FACTUAL BACKGROUND

The facts that are relevant to the Sixth Claim for Relief alleging fraud are briefly set forth herein. Defendant Outdoor Equipment Distributors, Inc. ("OED") is a distributor of power equipment (residential and commercial mowers, blowers, trimmers, etc.) which buys wholesale from large manufactures such as Defendant Exmark Manufacturing Company, Inc. ("Exmark"). The

plaintiffs, Robert Pinkston, Pinkston Sales & Services ("PS&S") and Pinkston's Lawnmower and Equipment, Inc. ("PL&E") (collectively referred to as "plaintiffs") are retail dealers of such equipment. The present controversy arises out of the business relationships of these parties.

The plaintiffs allege that they were fraudulently induced into signing a written non-exclusive dealership agreement[1] in February 2002 by comments made by representatives of the defendants. Just prior to the execution of the agreement by the parties on February 11, 2002, plaintiffs along with other dealers, approached representatives of OED & Exmark at a trade show. (Doc. No. 49: Second Amended Complaint ¶12). In an attempt to dispel a rumor that OED was considering bringing another dealer into Charlotte for its Exmark products, Pinkston asked whether OED intended to violate the oral exclusive arrangement between the dealers and OED. OED and Exmark representatives jointly said "you are our dealers and we have no intention of going into STI with our products." (Id.). The plaintiffs allege that this joint comment was fraudulent and that they relied upon it when they later signed the written contract.[2]

---

[1]The agreement reads in part: "GENERAL TERMS AND CONDITIONS. EXMARK and DISTRIBUTOR hereby appoint DEALER as a non-exclusive authorized dealer in the Area of Primary Responsibility (hereinafter referred to as "APR") identified on the Signature Page. In consideration thereof, DEALER hereby commits to: (a) purchase, promote and resell, in DEALER'S APR, AUTHORIZED PRODUCTS and replacement spare parts for the AUTHORIZED PRODUCTS at retail, on a non-exclusive basis, from the locations as indicated on the Signature Page; (b) use its best efforts to build market share therefore; and (c) provide effective post sale service on all AUTHORIZED PRODUCTS, including warranty service, regardless of origin of purchase. This Agreement contemplates the purchase by DEALER of whole goods, accessories, service parts and attachments from DISTRIBUTOR pursuant to such terms, discounts, financing programs and conditions as DISTRIBUTOR shall independently establish and transmit from time to time. EXMARK is not selling, nor is it obligated by this Agreement or otherwise to sell, AUTHORIZED PRODUCTS to DEALER. It is DEALER'S obligation to obtain AUTHORIZED PRODUCTS from an EXMARK DISTRIBUTOR. All orders for AUTHORIZED PRODUCTS purchased from DISTRIBUTOR shall be subject to acceptance or confirmation only by DISTRIBUTOR. DEALER acknowledges and agrees that the non-exclusive APR designated herein is only for the term of this Agreement and that DEALER acquires no vested right to this APR with respect to its being a DEALER of EXMARK in the future." (Doc. No. 1: Original Complaint: Ex. B).

[2]The agreement purports to supersede any prior agreement: "ENTIRE AGREEMENT: AMENDMENT. This Agreement (consisting of these Standard Provisions and the Signature Page) constitutes the entire agreement of the parties with respect to the matters referred to herein and supersedes any prior or contemporaneous understanding

**ANALYSIS**

**1. Common Law Fraud Generally**

The plaintiffs' fraud claim is subject to Federal Rule of Civil Procedure 9(b), which requires a claimant to plead fraud with particularity: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The "circumstances" are the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure: Civil §1297 at 590 (2nd ed. 1990)).

Therefore, the instant plaintiffs must allege with particularly the essential elements of fraud as set forth by North Carolina: "(1) [t]hat defendant made a representation relating to some material past or existing fact; (2) that the representation was false; (3) that when he made it, defendant knew that the representation was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that defendant made the representation with intention that it should be acted upon by plaintiff; (5) that plaintiff reasonably relied upon the representation, and acted upon it; and (6) that plaintiff thereby suffered injury." Cofield v. Griffin, 78 S.E.2d 131, 133 (N.C. 1953). While fraud can vitiate the duty to read a written agreement, see 27 Williston on Contracts § 69:35 ("if a party has fraudulently misrepresented a document's contents or induced the other party to refrain from reading the contract, courts will allow a remedy, choosing not to permit a positively fraudulent party to prosper because of the stupidity or credulity of the defrauded party . . . ."), a plaintiff must

---

or agreement with respect to the transactions contemplated. This Agreement may be amended only by a written instrument executed by all of the parties to it." (Doc. No. 1: Original Complaint: Ex. B).

4

still allege with particularity the essential elements of fraud. Such particularity is absent here.

## 2. Statement of Intent Did Not Constitute Fraudulent Inducement

The plaintiffs allege that the false representation made by the defendants upon which they reasonably relied was the statement: "[Y]ou are our dealers and we have no intention of going into STI with our products." (Second Amended Complaint at ¶ 15). This statement, made in the context of a question by plaintiffs as to whether the defendants intended to violate an oral exclusivity agreement, the plaintiffs argue, coupled with subsequent conduct by the defendants in securing other dealers in the plaintiffs area, is alleged to constitute fraud vitiating the written non-exclusive dealership agreement the parties subsequently executed. This is too slender a reed upon which to base a claim of fraud, and it fails for legal insufficiency.

Here, there is no evidence of deception pertaining to the written contract. First, the statement of intent was clearly in reference to their then-existing oral agreement and made no reference to a future written contract. Second, the plaintiffs fail to allege that the statement misrepresented the written contract's terms, or the enforceability of its terms, or that deception was used to prevent them from reading the contract. This statement of intent in the context of a question concerning a past oral agreement did not relieve the plaintiffs from the duty of reading a subsequent written contract and being accountable to its terms. Thus, the instant case is easily distinguishable from a case in which fraud vitiates the duty to read and be bound by the terms of the contract.

In <u>Allied Personnel of Raleigh, Inc. v. Alford</u>, a party was held to the terms of a written agreement signed by him even though he was told that a certain fee payment provision would not apply. 212 S.E.2d 46 (N.C. Ct. App. 1975). The North Carolina Court of Appeals reasoned: "There is no evidence that [he] was incapable of understanding the contract, or that [the other party's]

5

conduct was of such a type as to deceive a person of ordinary prudence, or that any devise was used to prevent [him] from reading the contract." Id. at 49. Here, the plaintiffs do not allege that the defendants' statement prevented them from either reading or understanding the contract. Thus, the claim fails as a matter of law.

The plaintiffs have urged the Court to consider carefully several cases cited in its Objection (Doc. No. 65). White Sewing Machine Co. v. Bullock, is a divided-panel, 1912 decision involving false statements to the effect that a potential rival only had 2 or 3 sewing machines (when in fact he had 106) and that he would no longer handle the machines (when he was in fact the exclusive agent). 76 S.E. 634 (N.C. Ct. App. 1912). The Court found that the plaintiff justifiably relied upon the false statements of subsisting facts and had no opportunity to investigate. Here, the contract was entered into after the conversation about the previous oral arrangement between the parties. The plaintiffs had opportunity to read the non-exclusive language in Section Two of the contract. Pinkston had the duty and opportunity to examine the language before signing. The Complaint alleges nothing that induced the plaintiffs into signing a non-exclusive contract without reading it.

Routh v. Snap-on Tools Corp, 423 S.E.2d 791 (N.C. Ct. App. 1992) also provides no helpful support to the plaintiffs. There, the plaintiff signed the instrument after a repayment terms provision, but before an arbitration provision and not where you would normally find a signature on the line at the end of an agreement. This unusual fact pattern was found sufficient to create sufficient ambiguity to warrant a jury determination on the issue of arbitration. Here, the merger clause, non-exclusive dealership section (Section 2) and other provisions of the instant contract contain no ambiguities. Finally, the Supreme Court case of McLain v. Real Estate Board of New Orleans, 44 U.S. 232 (1980) holding that a price-fixing conspiracy complaint should have proceeded

6

to trial is factually inapposite. The allegations contained in the plaintiffs' Second Amended Complaint taken as true are simply insufficient to state a claim for fraud vitiating the non-exclusivity provisions of the written contract.

**3. The Fraud Claim is Barred by the Statute of Limitations**

In addition to adoption of the M&R on the merits, this Court finds further that the three year statute of limitations for fraud bars the Sixth Claim for Relief. N.C. Gen. Stat. §1-52(9) provides that a fraud claim must be filed within three years of the aggrieved party's "discovery . . . of the facts constituting the fraud or mistake." See also State Farm Fire and Cas. Co. v. Darsie, 589 S.E.2d 391, 396 (N.C. Ct. App. 2003).

The plaintiffs argue that defendants' representatives told them fraudulently: "you are our dealers and we have no intention of going into STI with our products." The plaintiffs allege that all relations between OED and themselves were excellent until OED set up Steele Tree Company with the Exmark brand in December 2002. (Second Amended Complaint at ¶11). Because of the dilution in 2002 through 2003 in the plaintiffs' Exmark market, it had to take defensive measures. (Id. at ¶ 18).

It is clear from the plaintiffs' averments that the latest date for discovery of the facts supporting the alleged fraud would have occurred in December 2002 when the plaintiffs learned that their supposed exclusivity agreement was violated. This was a "discovery . . . of the facts constituting the [alleged] fraud . . . ." N.C. Gen. Stat. §1-52(9). Thus, while the plaintiffs argue that Pinkston did not realize fraud had occurred until he had been squeezed out of the market entirely, i.e., when the relationship between the plaintiffs and OED came to a complete end, the statute clearly began to run upon discovery of the facts constituting the alleged fraud in December 2002. Therefore,

because the initial Complaint was not filed until May 17, 2006, it is barred by the statute of limitations.

## CONCLUSION

After its *de novo* review of the defendants' 12(b)(6) Motions to Dismiss (Doc. No. 51, 52, 53), the plaintiffs' Second Amended Complaint (Doc. No. 49), their Objections to the M&R, all relevant pleadings, and viewing plaintiffs' allegations in light most favorable to them, the Court adopts the factual findings and legal conclusions of the M&R and concludes for those reasons, and the reasons set forth herein, that all plaintiffs claims for relief must be dismissed as a matter of law.

**SO ORDERED**.

Signed: October 12, 2007

Robert J. Conrad, Jr.
Chief United States District Judge